Hemphill, Ch. J.
The grounds on which a, reversal of the judgment is urged are—
1st. That the contract was partly performed by payment of part of the purchase-money.
2d. The answer acknowledges the facts and agreement as set forth in the petition, and does not plead the statute as a bar or defense.
3d. The statute should have been specifically set up as a bar or defense.
The statute referred to is the “ act to prevent frauds and fraudulent conveyances,” (Hart. Dig., p. 454,) which in its first section declares that “no action shall he brought whereby to charge any executor or administrator upon any special promise to answer any debt or damage out of his own estate, or whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, or to charge any person upon any agreement made upon consideration of marriage or npon any contract for the sale of lands, slaves, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year, &c., unless the promise or agreement upon which such action shall be brought or some memorandum thereof shall be in writing, and signed by the party to be charged therewith, or some person by him thereunto lawfully authorized.”
It will be perceived that the statute inhibits all actions npon contracts for the sale of lands'unless the agreement or some memorandum thereof shall he in writing; and were this law enforced according to its letter, there would be an end to this suit and to litigation upon contracts of this character.
It is a question worthy of the most grave consideration whether a court, under any circumstances, has power to enforce a parol agreement for the transfer of lands. The statute is emphatic and imperative in its terms. It prescribes a plain rule of action. It is true that the provision is copied substantially from the statute of the 29th Charles II, c. 3, tp prevent frauds and perjuries, and that courts of equity have on various grounds, notwithstanding the statute, enforced the performance of parol agreements for the sale of lands. These are, however, the adjudications of foreign courts upon foreign laws, and have no conclusive force or authority. (1 Bibb R., 203.) But the foreign and domestic statutes are identical in proscribing the requisite of written evidence, and the decisions of tribunals so illustrious for their wisdom in construing the terms of the provision or in expounding the grounds on *279 •which it should not be rigidly enforced are entitled to the highest consideration.
It may be proper to observe that courts of equity have never contended that they were not bound by the provisions of the statute, and where they enforce verbal contracts within the statute, it is not upon the ground that they are invested with dispensing power, but that by defeating fraud they are more effectually accomplishing tiie objects of the statute, and that the equities they enforce -are subservient to its true purposes “and collateral to and independent of it.”
But eminent judges in more modern times have regretted that full effect was not given to the statute. They have doubted the wisdom of departing from the rule therein prescribed, however plausible the pretexts which seemed to justify the exceptions. In Lindsay v. Lynch (2 Sch. & Lef. R., 4, 5, 7) the chancellor expresses his disapprobation of the course of decisions in the following terms: “The statute was made for the purpose of preventing frauds .and perjuries, and nothing can be more manifest, to any person who has been in the habit of practicing in the courts of equitj^than that the relaxation of the statute has been the ground of much perjury and much fraud. If the statute had been rigorously observed, the result would probably have been that few Instances of parol agreements would have occurred. Agreements would, from the necessity of the' case, have been reduced to writing; whereas it. is manifest that the decisions on the subject have opened a new door to fraud, and that under the pretense of part execution, if possession is had in any way whatever, means are frequently found to put a court of equity in such a situation that, without departing from its rule, it feels obliged to break through tiie statute,” •&c.
It may be said that the mischiefs produced by temporizing with the statute are obvious to all, but that the beneficent effects of a rigorous construction have not been tested by experience; that they exist only iii theory, and that there is no certainty that much fraud might not be perpetrated by an unconscientious •and perverse use of the statute.
However this may be — and it is not my design to discuss the subject— one result of the relaxation of the statute is beyond doubt: an uncertain and perplexing rule of action lias been substituted for one which was plain, easily understood, and the hardships of which would he attributed rattier to the negligence of the party than to tiie doubtful state of the law. (2 Story Eq., 765, 766; Roberts on Frauds, 137, 138; 1 Bibb R., 203; 4 Id., 59.)
These observations are thrown out to induce discussion in cases where it is sought to enforce parol agreements within the reach of the statute. The question is left open, aud we proceed to examine whether the facts presented in this ease are such as to bring the contract within any of the equitable exceptions which have been allowed to the statute.
The first ground, that the contract has been partly performed by payment -of part of the purchase-money, cannot be sustained. There lias been great fluctuation of decision as to the effect of payment of a small part, or of a considerable portion, or of the entire amount of the purchase-money. It seems that before the passage of the statute, according to some authority, tiie payment of a trifling part of the purchase-money would not have been regarded as a part performance of a parol contract, and would not have induced equity to decree its specific performance. Upon what ground the refusal of the courts could have been based is not clear. The statute has only altered the description of proof required to establish the contract; and where a parol agreement supported by a sufficient consideration is satisfactorily proved, and is not by .law required to be in writing, its validity and obligatory force cannot be disputed, and no more requires a part performance for its support than would a contract established by written evidence. (4 Bibb R., 96; 4 Mon. R., 192; 6 Id., 18; 7 Id., 566.)
In tiie cases first occurring after the statute payment of part of the purchase-money on a parol agreement for the sale of lands was deemed sufficient to sustain an action for the recovery back of the money, but. not for the *280 specific execution of (lie contract. (1 Freem. Ch. R., 486; 2 Cha. Ca., 135; 1 Vern. Ch. R., 472; Pr. Chan., 560; 2 Eq. Ca. Abr., 46.) But in Lacon v. Mertius (3 Atkins, 1) Lord Hardwick declared that paying- money had always-been held as one among other modes of part performance of an agreement. In later cases payment of a small portion of the purchase-money was held not to take the case out of the, statute, but a larger sum was deemed sufficient,. (4 Ves., Jr., 720; 9 Id., 234.)
But in Chinan v. Cook (1 Sch. & Lef., 22) the lord chancellor says “that it had always been considered that payment of the purchase-money is not to be deemed part performance to take the case out of the, statute. Seagood v. Meale (Pr. Chan., 260) is the leading case on that subject. There a guinea was paid by way of earliest; and it was agreed clearly that it was of no consequence in case of an agreement touching lands. Now, if payment of fifty guineas would take a case out of tlie statute, payment of one would do so--equally, for it is paid in both eases as part payment:, and no distinction can be-drawn."’ Tlie chancellor then states two reasons why part payment does not take an agreement out of the statute. The first of these is that by the statute part payment with respect to goods does not operate as part performance. Tliis ground has no application under our statute, which has no provision respecting contracts for the sale of goods. The second reason is that that is not to be considered part performance which docs not put tlie party in a situation that is a fraud upon him unless the agreement is performed. Por instance, if, upon a parol agreement, a man is admitted into possession, he is made a trespasser, and is liable to answer as a trespasser, if there be no agreement. Payment of money is not part performance, for it may be repaid; and then the parties will be just as they were, especially if repaid witli interest.
'the reasoning is plausible; but in case of insolvency of the vendor, unless-the agreement be executed, the vendee who has paid the purchase-money would suffer a loss equal in extent perhaps to the damages which a., vendee in possession, regarded as a trespasser, might incur. If he cannot obtain the land, he has been defrauded of liis money, and is left without remedy.
Mr. Justice Story regards the doctrine that payment, of the purchase-money is part performance in the sense of a court of equity so as to extract a ease from tiie statute as finally overthrown; and with him agrees Chancellor Kent. (2 Story Eq., 64; 4 Kent Comm., 451; 9 Watts & S. R., 85.)
In the case under consideration but three dollars were paid on the purchase. Under the older authorities this would have been deemed insufficient to bring tlie case within the exception of part performance; and under the latter authorities, if the whole of the money had been paid, the plaintiff could not claim tlie specific execution, but only tlie reimbursement of the money.
The second ground for the reversal of the judgment, that the agreement is acknowledged by the defendant in his answer, and that he does not plead the statute as a bar or defense, deserves an attentive examination. Courts of -equity have uniformly enforced contracts within the statute not in writing when confessed by the answer. The reason is that the design of the statute is to prevent fraud, and in such a case there can be no danger of the sort; and even in courts where equitable exceptions to the statute are not allowed, yet parol agreements, when admitted in tlie answer, are specifically enforced. ‘ (1 Marsh. R., 436.) Under the earlier decisions the contract, when acknowledged, was executed, although the statute was insisted upon as a defense; but this lias been overruled, and the statute, if insisted upon, is held to form a competent bar, though the agreement mav have been admitted. (Story Eq., 6, 9, 71, 74; 4 Kent Comm., 451; Welf. Eq. Pl., 3327; Sngd. Ven., 10th ed., 197; Thompson v. Todd, 1 P. C. C. R., 380; 2 Bro. Ch. R., 563, 564; 2 Coxe R., 369.)
But the question arises whether the defendant can claim the benefit. *281 of the statute bj' demurrer as well as by plea or answer. It seems that advantage may be taken of the statute of limitations in either mode of pleading. (Coles v. Kelsey, 2 Tex. R.; Welf. Eq., 386.) But from the, authorities it does not appear that I he. statute of frauds, when insisted on as a ddfense, has been generally pleaded by way of demurrer. It seems, however, to bo wholly immaterial whether the protection of the statute be sought by an exception in law or an answer in fact. In either mode the party attempts to avail himself of ills legal rights under the statute. In 12 Ves., 471, it is said to be immaterial what admissions are made by a defendant who insists upon the; benefit of the statute, for ho throws it on the plaintiff to show a complete1 written agreement; and it can no more be thrown upon tiie defendant to supply the defects in an agreement than to supply tiie want of an agreement. Now, if by an answer which admits tiie agreement it cau be thrown upon the plaintiff- to show a contract in writing, this certainly can he done by demurrer. They both admit an agreement by parol; but it is submitted whether such fact be sufficient in law to compel an execution of the contract. It is submitted whether the defendant can be legally bound by a parol contract, which the statute declares shall be in writing, or no action shall be maintained thereon; and it would seem that the answer must necessarily be in the negative. If the party confesses the agreement, and waives or does not insist upon the objection under the statute, the agreement may be enforced; but without this waiver a decree for performance would be clearly in total disregard of tiie statute. (2 Story Eq., 71; Story Eq. Pl., 721.) In Chambers v. Lecompte (9 Mo. R., 575) it was held that where a bill to enforce the specific performance of a contract shows that such contract was within the statute of frauds, it is ground of demurrer.
In fact, if the defendant can say, I admit the existence of this contract, but the statute requires it to be in writing, and therefore I am not legally bound, it is quite idle to make any distinction of words by which this declaration may be made.
As the decision of this point disposes of the ease, it will not be necessary to examine the other positions which have been presented on behalf of the' appellant. '
Judgment affirmed.
Lipscomb, J.
If our statute should be similar in its terms to one of another State, the decisions of the courts upon such statute, although ours may have been borrowed from it, on its construction, are entitled to high consideration in construing our statute, but they form no rule obligatory on our courts. A submission to such authority would he calculated to produce an absurd and sometimes an injurious result. The proposition that every court has the authority to overrule its own decisions will not be controverted. Now, are we to place ourselves in a worse, condition as to the freedom of judgment in submission to this foreign decision than if it had been made in our own courts? When a statute is to be construed, the court will give the words in which it is expressed the same meaning that they would convey in their ordinary acceptation in conversation. The words used in a statute enacted and construed two> centuries ago might at that time have had and conveyed a meaning different from what they would now; yet, by this despotic rule of stare decisis, we should be governed in construing the words now used in a statute just enacted by the decision made on the old one, enacted and construed in another court, and at a time when the meaning of the language was so very different. Again, when a court is about to revise and change one of its decisions, the propriety of so doing will be subject to many very important considerations. The first of course will be whether the decision was wrong at first. If so, has it been so long tiie rule of action in the court as to sanction the error by time ami its continued application as the rule of right between parties? Is it from *282 .its character likely to have controlled contracts in their formation? Although the first might be answered in the affirmative, yet, if the others were also in tlie affirmative, the court would not feel itself authorized or required to overrule the decision; because, if by its long usage and its having entered into the contracts of mankind it has become the law of property, it ought not to be disturbed. The court in such cases could say with great propriety, stare decisis. But if the decision was but recently made, and was not from its nature calculated to enter into the contracts of the country or to have regulated the transmission •of property, should the decision be thought to have been wrong, it would in such case be the duty of the court to overrule it. The policy of not disturbing the settled law of property, and more especially real property, is tlie only argument in favor of permitting a wrong decision to stand that common sense can approve. And wherever such would be the consequence the rule of stare decisis should prevail. But when we are called upon in the infancy of our jurisprudence to give a construction for the first time to a statute passed by our but recently organized legislative department of the State Government, to be told that there is to be a difference in the meaning of the same word in our ordinary conversation, and when used in expressing the will of the “Legislature, the proposition is too absurd to be listened to in tlie present enlightened age. When this proposition is carried further, and we are told that tlie judicial tribunals of the country are strictl}' bound to recognize this distinction and enforce it, because a different meaning had been appropriated to the same words by •some court centuries before in construing an act of Parliament, it then becomes not only ridiculously absurd but extremely mischievous by enabling the courts, by an arbitrary construction of language, to control and defeat the clearly expressed meaning of the Legislature. If the members composing the legislative branch of our Government were all jurists, perfectly familiar with the English •decisions from Bractou down to the Sth Adolphus & Ellis, and well understood the judicial meaning of each and every word used by them in their •statutes, then tlie distinction in the meaning of the same word in common •conversation and in the judicial tribunals would not be so absurd, but would be nevertheless in direct opposition to the policy of allfree governments, where •the people should not be kept in ignorance of the laws they are required to •obey, for it would make the acts of the Legislature a sealed book or too Del-phian for the comprehension of the masses on whom they were to operate. But it would be gross infatuation to suppose that judges arc to be wholly blind to the fact that the legislative branch is not composed of jurists, but of plain, practical, common-sense men, who honestly believe that there is but one language for the common conversation among men and the judicial tribunals of the land; and it would astonish the members of the Legislature who used the words “returned to the country” in one of their acts to be told that it did not have the same meaning as “coming back,” and implied that they had formerly been here, but that its meaning was “their coming first into the State.” But let us inquire how far this rule of stare decisis has prevailed in the courts of Eligland, where so much is claimed in its behalf; where a distinguished judge declared that “ You have but to show me the footsteps of my predecessors, and I will blindly follow.” Even there the opinion of Lord Hardwick, in the •case of Latham v. Mertham, commented on by the Chief Justice, in his opinion, notwithstanding the prestige of his great name — and one more exalted never .adorned the judicial history of any country — shows the frailty of the rule. His successors thought he was wrong, and they overruled his decision on Hie •statute of limitations. After the decisions of the courts had accumulated error upon error in its construction for more than a century, the court said that it was high time to look back to the statute and see what it really meant, and not what it had been decided to mean. And what lawyer is now to he Informed that they entirely subverted and overruled a long train of decisions running through more than a century of the judicial history of the country, .and gave what they conceived to be the common-sense meaning of the statute, regardless of the rule stare decisis as it is understood by some jurists, but, as *283 S believe, perfectly consistent with its true meaning, because' the statute of limitations could not be supposed to enter into the minds of contracting parties at the time of making their contracts, and therefore could not with any propriety be said to be a part of the law of their contract. Instances of the like kind have occurred in the courts of the several States of the American Union of overruling loug-established opinions and decisions of the courts on the statute of limitations. The great error on this subject I believe to be in •extending the rule to embrace a class of cases that do not come within the reason of the rule and were never intended to be included in its sphere of influence. To those who are sensitive and believe that this rule should never be approached but with sandals, I would recommend the 3d volume of the Practical Abridgment of American Common Law Reports, by Wheeler, from the first page to the one hundred and fifteenth page, inclusive, which will be found •taken up entirely with eases overruled and doubted. I would further refer them to the opinion of Judge Bibb, in Grant v. Craigmiles, 1 Bibb R., 203. Again, the absurdity of the rule of adopting the decisions of other countries upon a statute of the exact language or one of similar import of our own is the more manifest when we take into consideration that this same statute of frauds discussed in the opinion of the Chief Justice has been adopted, almost in terms, by nearly all our American States. It is therefore impossible to say from what particular book our legislators copied it. And yet the fact is known to almost every lawyer that different judicial constructions, almost as numerous as the States, have been given to almost every branch of the statute. Have we adopted all or which of these constructions ? Has the statute, with all these hydnvheads, become the rule of action in Texas ?
Note 38. — Dugan v. Colville, 8 T.. 126; Ottenhouse v. Burleson. 11 T., 87, Reynolds u Johnston, 13 T.. 214; Boze v. Davis, 14 T., 331; Whitson v. Smith, 15 T., 33; Neatherly u. Ripley, 21 T., 434; Taylor v. Rowland, 26 T., 293; Hendricks v. Snediker, 30 T., 296; Howe’s Heirs v. Rogers, 32 T., 218; Wood v. Jones, 35 T„ 64; Curlin v. Hendricks, 35 T.,225; Johnson v. Bowden, 37 T., 621; Robinson v. Davenport, 40 T., 333; Murphy v. Stell, 43 T., 123.
I have thus expressed my views of the rule stare decisis. I am now done with it. And so long as I have the honor to claim a seat on this bench I will respect it, so far as it is consistent with the principles I have expressed, and no further. Until the Legislature shall forbid it, I will give the same meaning to the language used in their statutes that I would in familiar conversation when using the same words, without regard to what other courts have decided such words to mean.
I fully concur with the Chief Justice in the opinion he has delivered in this ease.