## CITY OF NEW YORK INS. CO. v. MIDDLETON.

### No. 12851.

Court of Civil Appeals of Texas. Fort Worth.

May 20, 1933.

Rehearing Denied June 24, 1933.

Thompson, Knight, Baker & Harris and Robert Lee Guthrie, all of Dallas, for plaintiff in error.

Arthur Lee Moore, Cal Estill, and Tom McMurray, all of Fort Worth, for defendant in error.

DUNKLIN, Justice.

The city of New York Insurance Company has appealed from a judgment in favor of L. H. Middleton on a fire insurance policy for loss of a building. The recovery was for a total loss of the building, and appellant concedes its liability if the evidence offered was sufficient to show that at the time the policy was issued plaintiff was the unconditional and sole owner of the building, and the lot on which it was situated, within the meaning of the provisions of the policy. But it is insisted that the evidence showed that he was not such owner, and therefore he was not entitled to recover. Following is the stipulation in the policy on which that contention is predicated: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto shall be void if the interest of the insured in the property be other than unconditional and sole owner-

682

ship or if the subject of the insurance be a building on ground not owned by the insured in fee simple."

There was no indorsement on the policy.

In the agreed statement of facts the following appears: Appellant has never waived that stipulation in the policy. The plaintiff, Middleton, acquired title to the lot in which the house was situated from V. M. Burns, who acquired the same from his father, M. C. Burns, in this manner: During the year 1928 the father, who then owned the lot, entered into a parol agreement with the son to sell it to him, and in consideration therefor the son agreed to assume and pay off an outstanding mortgage lien then owing by the father, amounting to approximately $280, and also to pay to the father the sum of $400 additional. The father further agreed orally to make a deed to the son at any time he might desire it. The son then made full payment of those obligations during the year 1928, and after such payment he moved on the lot and lived on it as his home for about 6 or 8 months, when he moved off to another property which he had purchased; but there was no evidence showing just when he took possession of the lot in controversy. He made no improvements on the property. During the latter part of November, the son sent to the father by mail a deed of conveyance to the property for his execution, but the same was not executed until January 20, 1931. Immediately after its execution, it was mailed to the son and was received by him on January 22, 1931, which was approximately 10 days after the policy was issued, its date being January 12, 1931, and covering a period of one year from and after that date. That deed was recorded in the deed records of the county on October 28, 1931.

While V. M. Burns was claiming title under the parol agreement of his father, M. C. Burns, he and L. H. Middleton, plaintiff in this case, entered into a written agreement by the terms of which V. M. Burns agreed to sell, and Middleton agreed to buy, the lot in controversy for a consideration of $550 and the carrying of insurance on the house, Burns agreeing to make deed thereto "as soon as deed returns from his father." That agreement was never filed for record. On January 22, 1931, which was approximately 10 days after the policy was issued, V. M. Burns executed to Middleton, the plaintiff, a deed of conveyance to the property, but the same was never recorded in the deed records of the county. Plaintiff took possession of the property and began the erection of improvements thereon, but the same were destroyed before completion by the fire on January 25, 1931.

The policy was issued to plaintiff, L. H. Middleton, and appellant admits that at the time of its issuance he was the unconditional and sole owner of the property, notwith-

standing the absence of the deeds of conveyance later executed by the father and son, if a court of equity would have decreed to him such title in a proper suit instituted for that relief.

Appellant makes the further admission that, if at any time prior to the date of the policy V. M. Burns, plaintiff's vendor, was the owner of the equitable title to the lot enforceable in a court of equity, then plaintiff acquired the same title through him.

Article 1288, Rev. Civ. St. 1925, requires a conveyance of land to be evidenced by an instrument in writing executed by the vendor. And article 3995 of our statutes provides that no action shall be brought in any court upon any contract for the sale of real estate unless the same or some memorandum thereof be in writing, and executed by some person duly authorized by him. And under our registration statutes (Rev. St. 1925, arts. 1289, 6591 et seq.) such instruments must be duly acknowledged and recorded in the records of deeds in order to affect subsequent purchasers or creditors with constructive notice thereof.

When the policy was issued, plaintiff then had the contract in writing of V. M. Burns within the terms of article 3995—the statute of frauds—but specific enforcement of that contract by a court of equity would not have vested in plaintiff a higher title than was then owned by V. M. Burns. Such a decree would have left the legal title in M. C. Burns, who up to that time had never conveyed it by any deed in writing.

The question then is, would a court of equity have enforced the parol agreement of M. C. Burns to convey title to his son, V. M. Burns, who had paid the agreed consideration therefor and had entered into possession but who had made no improvements thereon? We have reached the conclusion that the question should be answered in the negative; under the decision of our Supreme Court in the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 1116, 15 A. L. R. 216, opinion by Chief Justice Phillips. We quote the following from that opinion:

"From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor

is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist.

"Regardless of the disposition of other courts to engraft other exceptions upon a plain and salutary statute · which had its origin in the prolific frauds and perjuries with which parol contracts concerning lands abounded, this court has always refused to further relax the statute. We think the wisdom of its course has been justified.

"Equity has no concern in such cases except to prevent the perpetration of a fraud. That·is the only ground that can justify its interference. Otherwise, the exercise of its jurisdiction for the practical annullment of the statute would be but bare usurpation. It is not to remedy a possible loss to the purchaser that it may intervene. It is the operation of a plain and valid statute that is to be relieved against. For this reason eminent judges have doubted whether under any circumstances courts of equity had originally the power to enforce such parol agreements in open disregard of the statute, and have questioned the wisdom of departing from its certain rule however plausible the pretext. The statute is valid; it is imperative; it is emphatic. Its simple requirement that contracts for the transfer of lands be in writing, imposes no hardship. The effect of its relaxation in what seemed to the courts hard cases has produced abuses almost as great as would have its rigorous enforcement, in the substitution of a doubtful state of the law for a rule that was plain and certain and easily capable of observance. * * *

"There is no fraud in refusing to enforce the contract where only the consideration is paid. The value of the consideration may in a law action be recovered. Nor where only possession of the premises is given. In such case there is no performance ·by the purchaser of any obligation. Nor even where there is ·both payment of the consideration and possession; without valuable and permanent improvements made on the faith of contract, or their equivalent."

Then follows references to former decision of our Supreme Court, all holding that the making of valuable improvements is one of the three necessary facts to be established in order to avoid the requirements of the statute of frauds. And we believe it clear from that opinion that the payment of full consideration and taking possession would not constitute fraud which would take the case out of the operation of the statute of frauds, as insisted by appellee.

■ And we conclude further that the provision in the policy that the same should be void "if the interest of the insured in the property be other than unconditional and sole ownership," etc., requires such ownership to exist at the time the policy is issued. Crescent Ins. Co. v. Camp, 64 Tex. 521; also Id., 71 Tex. 503, 9 S. W. 473; Pope v. Glenn Falls Ins. Co., 136·Ala. 670, 34 So. 29; Phœnix Ins. Co. v. Public Parks Amusement Co., 63 Ark. 187, 37 S. W. 959; Sisk v. Citizens' Ins. Co., 16 Ind. App. 565, 45 N. E. 804; Westchester Fire Ins. Co. v. Weaver, 70 Md. 536, 17 A. 401, 18 A. 1034, 5 L. R. A. 478; Liverpool & London & Globe Ins. Co. v. Cochran, 77 Miss. 348, 26 So. 932, 78 Am. St. Rep. 524; Farmers' & Merchants' Ins. Co. v. Hahn; 1 Neb. (Unof.) 510, 96 N. W. 255; Dow v. National Assurance Co., 26 R. I. 379, 58 A. 999, 67 L. R. A. 479, 106 Am. St. Rep. 728; Morotock Ins. Co. v. Rodefer, 92 Va. 747, 24 S. E. 393, 53·Am. St. Rep. 846.

■ Furthermore, the burden was upon plaintiff to show such ownership in him in order to make out his case. Pelican Ins. Co. v. Troy Co-op. Ass'n, 77 Tex. 225, 13 S. W. 980; Travelers' Ins. Co. v. Harris, 212 S. W. 933 (Tex. Com. App.); Coyle v. Palatine Ins. Co., 222 S. W. 973 (Tex. Com. App.); Phœnix Ins. Co. v. Boren, 83 Tex. 97, 18 S. W. 484; International Travelers' Ass'n v. Bettis, 120· Tex. 67, 35 S.W.(2d) 1040; Washington Fidelity Nat. Ins. Co. v. Williams (Tex. Com. App.) 49 S.W.(2d) 1093; Fidelity-Phœnix Fire Ins. Co. v. Two States Telephone Co. (Tex. Civ. App.) 289 S. W. 726; Northwestern Nat. Ins. Co. v. Westmoreland (Tex. Civ. App.) 215 S. W. 471; Northwestern Nat. Ins. Co. v. Mims (Tex. Civ. App.) 226 S. W. 738. See, also, opinion by Justice Alexander in American Ins. Co. v. Maddox, 60 S.W.(2d) 1074 (Waco Court of Civil Appeals); also opinion by Justice Funderburk, of the Eastland Court of Civil Appeals, of date March 24, 1933, in Chicago Fire & Marine Ins. Co. v. Foley, 58 S.W.(2d) 174.

■ The allowance of interest from January 25, 1931, was erroneous, at all events, since the proof of loss was furnished to defendant March 9, 1931, and the policy provides that payment of loss would be due 60 days after the ·furnishing of such proof. Fire Ass'n of Philadelphia v. Strayhorn (Tex. Com. App.) 211 S. W. 447; Springfield Fire & Marine Ins. Co. v. Brown (Tex. Civ. App.) 13 S.W.(2d) 916; Home Ins. Co. v. Bennett (Tex. Civ. App.) 9 S.W.(2d) 432.

For the reasons noted, the judgment of the trial court is reversed, and judgment is here rendered for appellant.