## AMERICAN NAT. INS. CO. v. WARNOCK.

### No. 3555.

Court of Civil Appeals of Texas. El Paso.

June 24, 1937.

Rehearing Denied July 15, 1937.

Frank S. Anderson, of Galveston, and W. B. Silliman, Hart Johnson, and Travers Crumpton, all of Fort Stockton, for appellant.

R. D. Blaydes, of Fort Stockton, and Mead & Metcalfe, of Marfa, for appellee.

WALTHALL, Justice.

This suit was brought by appellee, E. H. Warnock, against appellant, American National Insurance Company, a corporation, its place of business at Galveston, Tex., and S. C. Johnson, to recover damages for an alleged breach of contract to convey to appellee lots Nos. 12 and 13, block No. 14, Old Fort addition to the town of Fort Stockton, Pecos county, Tex., upon which lots was situated a building known and designated in the pleadings and elsewhere as "Rooney Hotel."

The pleadings are extensive; many of the facts pleaded are undisputed; the other facts were submitted to and found by a jury in favor of plaintiff. The undisputed facts and the facts found are substantially as follows:

The Stockton Building Association was a corporation, its place of business at Fort Stockton; that corporation owned the "Rooney Hotel." In 1930, the Stockton

Building Association borrowed $25,000 from appellant company and gave a deed of trust, identifying same as "Loan No. 4322," on the Rooney Hotel property to secure the loan. Soon thereafter, and prior to November 28, 1932, the Stockton Building Association became delinquent in its installment payments on the loan. In February, 1935, the Rooney Hotel property was sold under deed of trust foreclosure, and appellant became the purchaser for approximately $23,000.

On November 28, 1932, W. O. Watson, assistant treasurer for appellant, and purporting to act for appellant, wrote to S. C. Johnson, who had been a stockholder in the Stockton Building Association and in active control, but who had disposed of his stock to appellee. The letter contains the following: "We feel that the best course to pursue would be foreclosure proceedings on our part, at the completion of which this Company would be willing to resell the property on a basis similar to the one now existing. This seems to be the only method which occurs to me that will afford protection for our loan, and will relieve the antagonistic attitude now existing between the various parties interested in this property. If you have a better suggestion to offer, I would be glad to hear same."

Johnson showed the above letter to appellee, and in December, 1932, at the request and in the interest of appellee, Johnson went to Galveston to confer with W. O. Watson, speaking through Mills and Crim, clerks or assistants in Watson's office (Watson not being present), in the matter of the foreclosure and resale of the Rooney Hotel property, and on return to Stockton Johnson advised appellee, in effect, that Watson had agreed that, if said property was foreclosed and the company became the purchaser at such sale, the company would resell said property to Johnson or his nominee.

On January 4, 1933, S. C. Johnson wrote to W. O. Watson a letter in which the following occurs:

"Dear Watson: As I didn't hear from you while at Columbus and on my return home I received copy of sale notice I feel sure that you accepted the offer that I made to Mr. Mills while in your office.

"I asked Mr. Warnock to begin his payments under our agreement, and he was rather reluctant about making payments without something definite in writing from you regarding the foreclosure and sale back to him of the hotel property. I told him that Mr. Mills was very insistent on not having anything in writing for fear of being accused of collusion by the other stockholders. Mr. Warnock finally told me that he would mail you a check today, and make it payable to your company. I assured him that if he mailed the check to you and that you did not mean to go through with the deal as was agreed with Mr. Mills, that you would return the check, and if the check is cashed by your company we will take it to mean that you will foreclose in February, and after you purchase the property you will then resell it to him on the same basis the loan is now as was suggested in your letter of November 28, 1932.

"As far as we are concerned we have nothing to conceal from the other stockholders, Mr. Sibley is the only other stockholder besides the interest that I owned, and he has forfeited every right he ever had by making me promises of helping financially the monthly payments and then failing to do so for a year.

"I have come to the conclusion that Mr. Fosdick and Mr. Patterson was right in saying that Sibley was trying to wreck the Rooney Hotel so his hotel would have all the hotel of the town.

"On account of Mills' caution to me, I will file a copy of this letter in my private files and not the Company files.

"If I don't hear from you to the contrary and you deposit the Warnock check, we will go right ahead with our plans to take over hotel in February.

"S. C. Johnson."

In pursuance of said letter appellee mailed his check to appellant which was cashed by appellant. Appellee paid to appellant three checks of $75 each for the months of January, February, and March, 1933. He discontinued said payments, for the reason that W. O. Watson stated that he had made no such agreement, and for the reason that the hotel property was put in receivership. The receivership was discharged and closed about January, 1935.

In 1934 S. C. Johnson and wife sued Oskar Korn and others in two suits for rents alleged to be due on certain theater properties, one suit in Alpine, Tex., and one in Fort Stockton, Tex., the properties owned by Mrs. Johnson, and upon which properties appellant held deeds of trust. Appellant was made a party defendant in the two suits. The two suits were consolidated, and were set to be tried at Fort

Stockton at the September term of the district court, 1934. The suit was for damages for $10,000. During that time appellant was advertising the Rooney Hotel property for sale under its deed of trust, and appellee obtained an injunction to prevent the sale under the moratorium law. About the 17th of September, 1934, W. O. Watson and George P. Prendergast, attorney for appellant, were at Fort Stockton for the trial of the Johnson and wife suits. Appellee alleges that, in consideration of the dismissal of said suits as to appellant, appellant agreed with the attorney for Johnson, in effect, for appellee, that it would resell said hotel property to appellee if and when appellant became the owner under such foreclosure proceedings, and for a sum equal to the then outstanding principal obligation, interest and costs, and extend same over a period of ten years and reduce the interest from eight to 7 per cent., and fix the monthly payments at $250. Appellee alleges, and the evidence shows, that for his part said agreement was relied upon and carried out; that in pursuance of said agreement the said hotel property was sold and appellant became the purchaser of the property for the approximate sum of $22,000; that appellee was present at the sale, and immediately thereafter demanded of Watson a sale to him of the property under the terms agreed upon as alleged; that Watson then and there agreed to make such sale to appellee, but desired to first return to the office of appellant at Galveston, and requested of appellee and Johnson that they come to Galveston, which they did, when Watson advised appellee that appellant refused to make sale to appellee.

Appellee alleged his ability and willingness at all times to comply with the resale agreement to him; his reliance upon the promise to sell to him; that appellant's refusal to resell to him constitutes a fraud upon him; that appellant's agreement and representations to resell were made for the purpose of preventing appellee from foreclosing his judgment on said hotel properties until such time as appellant could foreclose its deed of trust and defeat appellee in collecting his said judgment.

Appellee then makes other allegations as to the value of said hotel property, its operating expenses, and his damages.

The record shows that appellant sold the hotel property to some one other than appellee.

Appellant answered by general demurrer, special exceptions, general denial, specially pleaded failure of consideration; that no such contract or agreement as alleged by appellee was ever made; that Watson, Crim, Mills, Jr., or Prendergast, or either of them, had no authority to contract to convey the hotel property to appellee; that such contract or agreement, if made, was void and unenforceable under the statute of frauds, being oral; was void as against public policy, being based upon a fraudulent scheme and conspiracy between appellee and Johnson, the latter in active charge and a director in Stockton Building Association, to defraud the creditors and stockholders of said association of the value of said property.

The cause was submitted to a jury. The jury found: (1) That W. O. Watson, prior to January 1, 1933, orally agreed with S. C. Johnson, as agent and representative of plaintiff, E. H. Warnock, to sell and convey to plaintiff the Rooney Hotel property in the event defendant (company) should acquire such property at foreclosure sale, on terms substantially the same as the defendant's (company) loan carried on said property; (2) the checks of date January, February, and March, 1933, for $75 each were given by plaintiff to the defendant (company) as payments on said contract; (3, 4) Johnson wrote the letter of date January 4, 1933, and addressed it to the defendant (company), and said letter was received by the defendant (company); (5) W. O. Watson, in the presence of George Prendergast, orally agreed with S. C. Johnson and R. D. Blades, in the library of the court house on or about September 17, 1934, to sell and convey the Rooney Hotel property to plaintiff Warnock, "on ten years time at a reduced interest rate of seven per cent. and in the amount of the company's loan on the property"; (6) such agreement was made upon the condition that the damage suit brought by S. C. Johnson and wife against defendant (company) and then pending in the court, would be dismissed; (7, 8) plaintiff has sustained damages in the sum of $7,000 by reason of the failure of the defendant (company) to sell and convey to him the Rooney Hotel property; (9) Watson had apparent authority to contract in behalf of defendant (company) with plaintiff through plaintiff's agent, Johnson, to sell and convey the Rooney Hotel property, if and when acquired by defendant; (10) the directors and officers of the defendant

company knew that Watson had made a contract for said company to sell the Rooney Hotel property to plaintiff.

The court rendered judgment in favor of plaintiff against the defendant company for the amount found by the jury, and thus, by necessary implication, disposed of all issues, and from which appellant appeals.

## Opinion.

The findings of the jury, upon which the court rendered judgment, are based upon two contracts or agreements, one is referred to as the Galveston agreement, and the other as the Fort Stockton agreement. The Galveston agreement was made prior to January 1, 1933, and as to which the writings copied in the statement have reference. Under that agreement appellee made the payments of the three checks of $75 each, and under the statement in the letter of January 4, 1933, addressed to Watson, in effect, that if the checks were retained and cashed Warnock would take it to mean that appellant would foreclose the deed of trust, and, after appellant had purchased the property, appellant would resell it to Warnock on the same basis the original loan was made. For reasons stated no action was taken at the time agreed upon to foreclose the deed of trust. In September, 1934, Watson and George Prendergast were in Fort Stockton—at that time the Fort Stockton agreement was made. Both agreements referred to the same thing, the parties were the same; the cause or causes that had prevented or caused the delay in the foreclosure proceedings had been removed. Watson at that time renewed, as we understand it, the agreement to sell the Rooney Hotel property to Warnock on the terms stated, and found by the jury. In the Fort Stockton agreement there was no writing, the agreement was oral. Appellant, by several propositions, submits that the agreement to sell the Rooney Hotel to Warnock, being oral, is void under the statute of frauds; that the payment of the checks was made on the Galveston agreement, an oral agreement; that the consideration for the oral Fort Stockton agreement was the dismissal of appellant from a damage suit then pending, as found by the jury.

We will consider the two agreements together and as one agreement; that appellant, under the circumstances stated, had received the three $75 checks and had accepted the dismissal of the $10,000 damage suit, the three checks in part payment on the price to be paid for the property on the terms agreed upon, and the dismissal of the damage suit, as a consideration for the agreement.

A contract subject to the statute of frauds is not void, but voidable only. Courts of chancery act upon the theory that the statute of fraud was adopted to prevent fraud, and will not permit to be invoked or employed so as to effect a fraud, that is, being about the very thing which it was the object of the enactment to prevent. Halsell v. Scurr (Tex.Civ.App.) 297 S.W. 524, 528. In Johnson v. Smith, 115 Tex. 193, 280 S.W. 158, 161, it is said: "The statute of frauds does not stand in the way of the exercise of this equitable jurisdiction." 20 Tex.Jur. p. 216, par. 7 and note.

The fraud to prevent which equity interposes to relieve an oral contract from the statute is stated by the Commission of Appeals in Ward v. Etier, 113 Tex. 83, 251 S.W. 1028, 1031, "must be such as arises out of and as a result of the contract. Mere wrongs resulting from reliance on such a contract and not arising out of it, however gross they may be, will not relieve the contract from the statute. It is not merely to remedy loss to the purchaser that equity may intervene."

The payment of the checks was a part of the consideration to be paid had the sale been made, and did arise out of and as a result of the contract, as did the dismissal of the suit. The payment and acceptance of the checks, and the acceptance of the dismissal of the suit, as a consideration for the agreement to sell the property to appellee, can each well be considered as a fraud upon the proposed purchaser, when not observed.

But the question remains: Are the facts sufficient to relieve a parol agreement for the sale of land from the operation of the statute of frauds (Vernon's Ann.Civ.St. art. 3995)?

The suit here is not for specific performance of the agreement to sell; appellant, by the sale to another, had put it beyond its power to convey to appellee. The suit is for the damages resulting to appellee for a breach of the agreement to sell.

The facts as we construe them, as pleaded, and as uncontroverted or found by the jury, show a parol agreement to sell the Rooney Hotel property on the terms

agreed upon. We can refer to only a few of the many cases we have reviewed. It is not claimed by appellee, nor is it made to appear, that the agreed price for the Rooney Hotel was paid, nor that Warnock was in possession, nor put in possession of the hotel property, nor that Warnock made any improvements on the property; the claim made by appellee to relieve the parol sale of the land from the operation of the statute of frauds in the presence of such facts as would make the transaction a fraud upon him, the proposed purchaser, if and when not observed by the seller. Appellant refers us to, and relies upon, the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116, 15 A.L.R. 216, and similar cases referred to. In that case Judge Phillips, for the Supreme Court, said: "From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist."

In the case of Matthewson v. Fluhman (Tex.Com.App.) 41 S.W.(2d) 204, Judge Ryan, of the Commission of Appeals, refers to the Hooks v. Bridgewater Case, and to the reliance by defendant in error to sustain his contention that the agreement in question is unenforceable because of the statute of frauds. Judge Ryan said there was no inconsistency between that case and the conclusion the court had reached in the case under consideration, and pointed out the exception that made difference, the matter of fraud, to which we must refer only.

The Matthewson v. Fluhman Case, which we think under the facts applicable to the instant case, holds, in effect, that, where a proposed purchaser has performed the oral agreement to purchase, that it would be perpetrating a fraud to allow the seller to set up the statute of frauds, equity will enforce the agreement; that, where the seller of land in bad faith disables himself from conveying, the purchaser may recover damages for the loss of his bargain, and referred to Texas Company v. Burkett, 117 Tex. 16, 296 S.W. 273, 279, 54 A.L.R. 1397, in which Judge Cureton, for the Supreme Court, said: "The general rule is that, where one party to an oral contract has in reliance thereon so far performed his part of the agreement that it would be perpetrating a fraud on him to allow the other party to repudiate the contract and set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute, and will enforce the contract."

To the same effect is Morris v. Gaines, 82 Tex. 255, 17 S.W. 538, 539, in which Judge Gaines, for the Supreme Court, said: "The doctrine is well established that where either party, in reliance upon the verbal promise of the other, has been induced to do * * * any act, and thereby his position has been so changed for the worse that he would be defrauded by a failure to carry out the contract, equity will enforce a performance."

Many other cases similar to the above are referred to in volume 2 Tex.Jur. p. 497.

Appellant submits a number of propositions to the effect that appellant's motion for an instructed verdict should have been granted. We have carefully considered them. They submit that there is no evidence to show that Watson had authority, express or implied, to contract to sell the land, or that appellant had knowledge of or ratified the contract to sell, or that appellee relied upon Watson's authority or apparent authority; that the evidence shows affirmatively that Watson had no authority to contract to sell; that there is no evidence to show that appellant practiced any fraud or had knowledge of any fraud. The evidence shows without question that, when Johnson went to Galveston and made his business known to appellant, he was referred to Mr. Watson as the one who had that matter in charge for the appellant. We have considered all of appellant's propositions in connection with appellant's pleadings, the evidence offered, the approved bills of exceptions, and the jury's findings, and, without discussing them in detail, overrule them. We·

have found nothing in the record to suggest that the agreement was against public policy. The evidence is sufficient, we think, without quoting it, to sustain the jury's findings.

The case is affirmed.