AMERICAN NATIONAL INSURANCE COMPANY v. E. H. WARNOCK.

No. 7331.  Decided April 6, 1938.
Rehearing overruled May 18, 1938.
(114 S. W., 2d Series, 1161.)

*Frank Anderson,* of Galveston, *W. B. Silliman, Hart Johnson* and *Travers Crumpton,* all of Fort Stockton, for plaintiff in error.

The defendant having specially pleaded the Statute of Frauds in bar of plaintiff's suit, and the evidence being undisputed that plaintiff was never in possession of the premises and had placed no improvements thereon and had only paid a small portion of the alleged purchase price and no act referable to the contract being shown, the court should have granted defendant's motion for instructed verdict. Clegg v. Brannan, 111 Texas 367, 234 S. W. 1076; Altgelt v. Escalero, 110 S. W. 989; Bradley v. Owsley 74 Texas 69.

*R. D. Blaydes,* of Fort Stockton, and *Mead & Metcalfe,* of Marfa, for defendant in error.

MR. JUSTICE SHARP delivered the opinion of the Court.

E. H. Warnock sued the American National Insurance Company to recover $30,000.00, arising from the breach of oral contracts to convey real estate situated in Fort Stockton, Texas, known as the Rooney Hotel. Warnock based his claim for damages on the loss of his bargain. He alleged as the basis for damages the difference in the amount of money he agreed to pay for the premises and the market value thereof at the time of the alleged breach of the contracts and refusal by the American National Insurance Company to convey. The jury found this difference to be in the amount of $7,000.00, and judgment was rendered accordingly. The American National Insurance Company appealed to the Court of Civil Appeals at El Paso, and the judgment of the trial court was affirmed. 107 S. W. (2d) 1042. The American National Insurance Company brings error.

As stated in the opinion of the Court of Civil Appeals, the

pleadings are extensive, and the record taken as a whole is voluminous. We refer to the opinion of the Court of Civil Appeals for a detailed statement of the nature of the suit and the issues presented to and considered by that court; but since this Court considers the cause narrowed to one question, and that one of law, we shall refer only to that part of the record relating to the question to be decided.

The writ of error was granted on the proposition that the American National Insurance Company having specially pleaded the Statute of Frauds in bar of Warnock's suit, and the evidence being undisputed that Warnock was never in possession of the premises, and had placed no improvements thereon, and had paid only a small portion of the alleged purchase price, and no act referable to the contract being shown, the trial court should have granted the Insurance Company's motion for an instructed verdict.

The trial court submitted to the jury issues covering two separate contracts. One is called the Galveston agreement and the other the Fort Stockton agreement. The Galveston agreement was made prior to January 1, 1933. On that agreement the jury found that Warnock gave three checks of $75.00 each as payments on an oral agreement between W. O. Watson, as the Insurance Company's agent, and S. C. Johnson, as agent for Warnock, to sell the premises to Warnock. The jury found that the dismissal of the damage suit against the Insurance Company was the consideration for the second oral agreement between W. O. Watson, as agent of the Insurance Company, and S. C. Johnson and R. D. Blaydes, on September 17, 1934, to convey the premises. The jury also found that on January 4, 1933, S. C. Johnson wrote and addressed a letter to the Insurance Company, and that such letter was received by the Insurance Company. The Court of Civil Appeals treated the two contracts as one, and based its conclusions thereon.

The controlling facts are brief. It is undisputed that Warnock had no interest in the damage suit from which the Insurance Company was dismissed, and that he was not a party to said suit. It is also undisputed that Warnock was never placed in possession of the premises, and that he did not place any improvements thereon. The letter claimed to have been written on January 4, 1933, by S. C. Johnson to W. O. Watson, and by reason whereof the three checks were paid to the Insurance Company, reads as follows:

"Dear Watson: As I didn't hear from you while at Columbus and on my return home I received copy of sale notice I feel sure

that you accepted the offer that I made to Mr. Mills while in your office.

"I asked Mr. Warnock to begin his payments under our agreement, and he was rather reluctant about making payments without something definite in writing from you regarding the foreclosure and sale back to him of the hotel property. I told him that Mr. Mills was very insistent on not having anything in writing for fear of being accused of collusion by the other stockholders. Mr. Warnock finally told me that he would mail you a check today, and make it payable to your company. I assured him that if he mailed the check to you and that you did not mean to go through with the deal as was agreed with Mr. Mills, that you would return the check, and if the check is cashed by your company we will take it to mean that you will foreclose in February, and after you purchase the property you will then resell it to him on the same basis the loan is now as was suggested in your letter of November 28, 1932.

"As far as we are concerned we have nothing to conceal from the other stockholders, Mr. Sibley is the only other stockholder besides the interest that I owned, and he has forfeited every right he ever had by making me promises of helping financially the monthly payments and then failing to do so for a year.

"I have come to the conclusion that Mr. Fosdick and Mr. Patterson was right in saying that Sibley was trying to wreck the Rooney Hotel so his hotel would have all the hotel of the town.

"On account of Mills' caution to me, I will file a copy of this letter in my private files and not the Company files.

"If I don't hear from you to the contrary and you deposit the Warnock check, we will go right ahead with our plans to take over hotel in February.

                                        "S. C. Johnson."

The Court of Civil Appeals held that such part payment as evidenced by the three checks constituted fraud upon Warnock, and that it was sufficient to warrant equity to remove the oral contract from the operation of the Statute of Frauds. In reaching this conclusion, the Court of Civil Appeals said: "The facts as we construe them, as pleaded, and as uncontroverted or found by the jury, show a parol agreement to sell the Rooney Hotel property on the terms agreed upon. We can refer to only a few of the many cases we have reviewed. It is not claimed by appellee, nor is it made to appear, that the agreed price for the Rooney Hotel was paid, nor that Warnock was in possession, nor put in possession of the hotel property, nor that Warnock

made any improvements on the property; the claim made by appellee to relieve the parol sale of the land from the operation of the statute of frauds in the presence of such facts as would make the transaction a fraud upon him, the proposed purchaser, if and when not observed by the seller." The court then cites and discusses the case of Matthewson v. Fluhman, (Tex. Com. App.) 41 S. W. (2d) 204, as an authority for the conclusions reached in the instant case.

In 1840 the policy relating to what is required to enforce contracts pertaining to certain matters was announced by the Congress of the Republic of Texas. (Acts 1840, p. 28; P. D. 3875; Gammel's Laws, Vol. 2, p. 202.) For nearly a century that policy has remained fixed in our laws, and it is incorporated in what is commonly known as the Statute of Frauds, now Article 3995, Vernon's Annotated Texas Civil Statutes. So much of the article as is material to the case reads as follows:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

" * * *

"4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year;"

1 The principles incorporated in the foregoing article of the statutes are of ancient origin. Other courts may have wavered about enforcing the rule, but the courts of this State, with few exceptions, have steadfastly refused to relax the enforcement of such rule. As early as 1851 the construction of this statute came before this Court. It was invoked in the case of Garner v. Stubblefield, 5 Texas 552, and in the course of an able and instructive opinion, rendered by Chief Justice HEMPHILL, it was said:

"It will be perceived that the statute inhibits all actions, upon contracts for the sale of lands unless the agreement, or some memorandum thereof, shall be in writing; and were this law enforced according to its letter, there would be an end to this suit, and to litigation upon contracts of this character.

"It is a question worthy of the most grave consideration, whether a Court, under any circumstances, has power to enforce a parol agreement for the transfer of lands. The statute is emphatic and imperative in its terms. It prescribes a plain rule of action."

In the case of Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114, 15 A. L. R. 216, the rule naming the essential requisites to remove a case from the operation of the Statute of Frauds is clearly stated by Chief Justice PHILLIPS in the following language:

"From an early time it has been the rule of this Court, steadily adhered to, that to relieve a parol sale of land from the operation of the Statute of Frauds, three things were necessary: (1) Payment of the consideration, whether it be in money or services: (2) Possession by the vendee. And (3) The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Texas 551. Nor is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Texas 18. Each of these three elements is indispensable, and they must all exist."

It is contended that the facts of this case relieve it of the rule above stated. Let us test this contention by the facts. The jury found that W. O. Watson prior to January 1, 1933, orally agreed with S. C. Johnson, as the agent of Warnock, to sell and convey to Warnock the premises, in the event the Insurance Company should acquire such property at a foreclosure sale. The jury also found that Warnock made three payments of $75.00 each, in January, February, and March, of 1933, on such oral contract. The jury further found that in September, 1934, W. O. Watson orally agreed to sell the property to Warnock on certain conditions; that such agreement was made on condition that the damage suit filed by Johnson and wife against the Insurance Company, and then pending in the court, would be dismissed; that the amount of damages sustained by Warnock was $7,000.00. It is also contended that when due consideration is given to the letter written by S. C. Johnson to the Insurance Company, and to the payment of the three checks, each for the sum of $75.00, as above stated, it would be unjust and inequitable not to give Warnock the relief prayed for.

Let us concede that Warnock paid the $225.00 as a payment on the oral contract made prior to January 1, 1933, as contended for by him, and also concede that the suit was dismissed on the oral agreement made in September, 1934, and also take into consideration the letter written by Johnson to the Insurance Company and the finding of the jury that it was received by

the Insurance Company. When all these facts are analyzed, do they relieve him from the operation of the Statute of Frauds?

There is some controversy about the Insurance Company's ever receiving any such letter; but the jury found that it was received, and that fact will be accepted as true. The record shows that Warnock held a judgment, approximately in the sum of $8,000.00, against the hotel in 1933. It is undisputed that Johnson owed the Insurance Company a sum aggregating $23,000.00, which was evidenced by two loans. One of the loans owed by Johnson was numbered 4322, and was secured by a lien against the hotel property. It is also undisputed that the payments had not been kept up on the hotel property and the Insurance Company was about to resort to foreclosure proceedings. Johnson represented himself, as well as Warnock, and both were interested in the foreclosure proceedings. The letter shows that it was written to W. O. Watson, and in the letter it is stated that Warnock would send his check to the Insurance Company. It is not contended that any check was sent with that letter. The checks were signed by Warnock, and bore the following notation: "Apply on Loan No. 4322." No acknowledgment of the letter by the Insurance Company, or anyone representing it, was made. The proceeds of the three checks, each for $75.00, were applied to loan No. 4322.

In this instance a letter was mailed to the agent of the Insurance Company, in which a mere offer to buy the property is stated in a vague manner; and this record shows indisputably that neither the Insurance Company nor its agent ever replied to the letter or accepted the offer made therein.

2 To form a binding contract, it must appear that the party to whom the offer is made accepts such offer and communicates such acceptance to the person making the offer; and in the case of an offer to buy or sell land, the acceptance must be in writing. The facts of this case do not furnish the essential requisites to make a binding contract. This Court, in Patton v. Rucker, 29 Texas 402, said:

"In order to their enforcement by the courts, contracts for the sale of land must be evidenced by writing. Where the writing relied on contains within itself all the particulars of a concluded contract, it is sufficient, if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement,—whatever may be its form,— it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party, only by his acceptance of it in writing." See also Foster v. New

York & T. Land Co., 2 Texas Civ. App. 505, 22 S. W. 260; Waples-Platter Co. v. Montgomery, (Tex. Civ. App.) 65 S. W. (2d) 391; Browning-Ferris Machine Co. v. Thomson, (Tex. Civ. App.) 58 S. W. (2d) 183.

**3** The letter being eliminated as a basis for this suit, the case finally rests on the payment of the three checks for $75.00 each and a dismissal of the suit for damages, both of which rest on oral agreements. Do these facts relieve Warnock from the operation of the Statute of Frauds? This question is fully answered in Hooks v. Bridgewater, supra, in the following language:

"There is no fraud in refusing to enforce the contract where only the consideration is paid. The value of the consideration may in a law action be recovered. Nor where only possession of the premises is given. In such case there is no performance by the purchaser of any obligation. Nor even where there is both payment of the consideration and possession; without valuable and permanent improvements made on the faith of contract, or their equivalent."

This statute has long been a part of our laws, and the wisdom of the policy expressed therein has been amply vindicated. It may well be expected that in some instances injury will result from the enforcement of this rule. This is true in the enforcement of almost any rule; but experience has taught that less harm will result from a strict enforcement of the statute than from a relaxation of the rule. The object of the law is to prevent fraud and not to permit the perpetration of a fraud. Where the latter issue is presented, under certain facts courts will grant the parties proper relief.

The courts of this State have not hesitated to grant relief with respect to an agreement to convey land, and enforce same, where a party has performed his part of the agreement to such an extent that to deny the enforcement of same would be unjust and inequitable. For instance, we refer to the case of Johnson et al. v. Smith et al., 115 Texas 193, 280 S. W. 158. In that case the testimony showed that one Elymas Johnson bought a tract of land from Sherrod, the owner thereof, and received a deed, in which were described some vendor's lien notes; that subsequently Elymas Johnson and wife, being unable to pay the notes, or to pay anything on the land, requested John Johnson and some other parties to assume the payment of the notes, agreeing that John Johnson and others should thereupon become the owners of the land; and that an attempt was made to prevent the enforcement of the contract performed by Johnson and his associates. The opinion states: *"That in compliance with*

*such request and agreement plaintiffs in error assumed and paid the notes and constructed permanent and valuable improvements on the land and became the owners of same, and have ever since been in the actual, adverse possession thereof; and that defendants in error have no claim to the land save by inheritance from Elymas Johnson and wife now deceased."* (Italics ours.) Under this statement Mr. Justice GREENWOOD, in rendering the opinion of this Court, correctly held that it is plainly the duty of a court of equity to enforce a contract to prevent the perpetration of such a fraud, and further held that, "The Statute of Frauds does not stand in the way of the exercise of this equitable jurisdiction."

With few exceptions, the rule announced in the cases of Garner v. Stubblefield, supra, and Hooks v. Bridgewater, supra, has been consistently followed by this Court. We shall not cite nor discuss the exceptions.

Recently this question again came before this Court for consideration, and the rule was carefully considered and reiterated in the cases of Upson v. Fitzgerald, 129 Texas 211, 103 S. W. (2d) 147, and Francis v. Thomas, 129 Texas 579, 106 S. W. (2d) 257. Judge HICKMAN, of the Commission of Appeals, wrote the opinions for this Court in both cases. In Upson v. Fitzgerald it was said: "Generally, when a court is called upon to enforce a plain, valid statute, it gives no consideration whatever to the question of whether its enforcement appears to work an injustice in the case before it. To determine the wisdom vel non of a statute is not a judicial function. 'Equity follows the law,' is a familiar maxim. With respect, however, to this particular statute, there has arisen a doctrine, recognized in our jurisdiction, that courts of equity will not enforce same, when to do so plainly works a positive fraud. Where the consideration has been paid but nothing more done, it does not work a fraud to refuse to enforce an oral contract for the sale of land, since the value of the consideration may be recovered in an action at law on quantum meruit. Stevens v. Lee, 70 Texas 279, 280, 8 S. W. 40; Hooks v. Bridgewater, supra." Also, in Francis v. Thomas it was said: "If in fact plaintiff suffered any loss, it is capable of accurate ascertainment, and the law affords him full protection. If nothing short of specific performance of such oral contracts will make a party whole and prevent the perpetration of a fraud, courts of equity will grant that relief, but where, as here, an adequate legal remedy is afforded, and the enforcement of the statute will not perpetrate a fraud, equity will not interpose.

"Defendants rely upon the case of Matthewson v. Fluhman, (Tex. Com. App.) 41 S. W. (2d) 204. We shall not undertake to harmonize all that is written in that opinion with the various opinions of this court above cited. The opinion in that case was not adopted by the Supreme Court, and to the extent that it may conflict with the opinions of the court herein cited it must yield to them as authority."

In this case Warnock does not sue for the payment made by him to the Insurance Company as part payment for the property, but sues to recover damages arising from the breach of the two oral contracts. The Insurance Company invokes the Statute of Frauds against the enforcement of the two contracts described by Warnock. The Statute of Frauds gives the Insurance Company this right. When properly invoked, it prohibits the enforcement of a contract condemned by it.

We have again reviewed the decisions of this Court relating to this question, and have concluded that the rule is correctly stated in Hooks v. Bridgewater, supra, and reaffirmed in Upson v. Fitzgerald, supra, and Francis v. Thomas, supra, and should be adhered to.

We have carefully examined this record, and are unable to find any fact which removes Warnocks' claim asserted in this suit from the operation of this statute.

Therefore the judgments of the trial court and Court of Civil Appeals are reversed, and judgment is rendered in favor of the American National Insurance Company.

Opinion delivered April 6, 1938.

Rehearing overruled May 18, 1938.