Sidney P. LEE and B. David Benfer, Jr., independent executor of the Estate of Zelma T. Benfer, Deceased, Appellants,

v.

James H. STROMAN, Appellee.

No. 17661.

Court of Civil Appeals of Texas, Dallas.

July 23, 1971.

Rehearing Denied Sept. 17, 1971.

Linda A. Whitley, Berman, Fichtner & Mitchell, Richard S. Geiger, Ewing & Geiger, Dallas, for appellants.

Wm. A. McKenzie, Allen Joe Fish, McKenzie & Baer, Dallas, for appellee.

GUITTARD, Justice.

In this suit by the seller of a house and lot to recover liquidated damages from the buyer, the question is whether the buyer's offer was effectively accepted by the seller's agent within the time specified in the offer. We hold that the acceptance was not effective because it was not accompanied by evidence of the agent's authority.

Plaintiff Sidney Lee lived in the Virgin Islands but operated a business in Dallas. He listed his Dallas residence with broker Zelma Benfer for sale at a price of $150,000 "or on such terms as I may approve." Mrs. Benfer contacted defendant James Stroman and obtained from him an offer of $106,000 and an earnest money check for $10,600 payable to Fidelity Title Company. Mrs. Benfer prepared a form of contract dated August 19, 1966, which Stroman signed, and on Stroman's instructions the following provision was inserted: "This contract is contingent upon Purchaser's acceptance prior to 5:00 P.M., Monday, August 22, 1966; otherwise the deposit money herein receipted for is to be returned to the Purchaser." The parties agree that "Purchaser's acceptance" was an error, and that "Seller's acceptance" was intended and understood.

Since Mrs. Benfer died before trial, most of the testimony comes from defend-

ant Stroman. He testified that he insisted upon the acceptance deadline because he had an option expiring that same day on another piece of property which he desired to buy if this sale did not go through. Shortly after noon on August 22 Mrs. Benfer telephoned him and advised that his offer had been accepted but that she did not have the papers in front of her and would call him back. Later she called again and said that Lee had not signed the contract but that it had been signed by Nadine Thomas as his agent and that she was trying to obtain Mrs. Thomas' power of attorney. Stroman told her he would not accept Mrs. Thomas' signature without the power of attorney. Mrs. Benfer said that she would obtain the power of attorney and deliver it to him before five o'clock at the house.

Stroman went to the house about four-thirty, but Mrs. Benfer did not come until after six, saying that she had been delayed because she was having trouble getting the power of attorney. She handed him a sealed envelope. On his way home Stroman opened the envelope and saw that it contained only the proposed contract signed by Nadine Thomas. He called Mrs. Benfer and asked if she had omitted the power of attorney. She said she had been unable to get a power of attorney. Stroman then told her he was withdrawing his offer and was going ahead with his other deal since his option would expire at midnight. She told him that she had done her best and did not understand why they would not give her power of attorney un- less they did not have one. Stroman then wired the bank to stop payment on his check and called the other agent and advised that he was exercising his option. Next day he signed a contract to buy the other property.

Lee testified that he had given Nadine Thomas, his administrative assistant, a power of attorney to sign a contract to sell the house. The power of attorney, which is dated June 10, 1966, was admitted in evidence, and is sufficient for that purpose.

Lee further testified that on August 19 Mrs. Benfer advised him by telephone of Stroman's offer and he told her he accepted it.

Nadine Thomas testified that she signed the contract for Lee about 11:00 A.M. on August 22. She said she had a discussion with Mrs. Benfer about signing the contract for Lee and showed Mrs. Benfer her power of attorney but did not give it to Mrs. Benfer to take away with her.

Next day Billy J. Harwell, an officer of Fidelity Title Company, wrote Mrs. Thomas a letter stating that Stroman had rescinded the contract because he would not accept her signature without a certified copy of the power of attorney. He stated that he had continually tried to reach her on the afternoon of August 22 but had not been able to talk to her. In response to this letter Mrs. Thomas mailed the power of attorney to the title company.

When Stroman refused to complete the sale, Lee sued him to recover the amount of the earnest money deposit as liquidated damages, and Mrs. Benfer's executor joined, claiming a broker's commission. At the close of plaintiffs' evidence the trial court sustained defendant's motion for instructed verdict and rendered judgment for defendant, from which plaintiffs appeal.

Plaintiffs contend that since an agent may bind his principal to an executory contract for sale of land without written authority, it is not necessary that written evidence of the agent's authority be furnished to the purchaser, and that when Mrs. Benfer advised Stroman orally before the deadline that his offer had been accepted and the contract had been signed by Mrs. Thomas as Lee's agent, both parties were bound. We do not agree that Mrs. Thomas' signature and Mrs. Benfer's oral advice amounted to an effective acceptance.

According to Professor Corbin, an offeror may specify the mode of acceptance, and if no particular mode is specified,

whether notice of acceptance is required depends on circumstances. Notice of acceptance must be given if the offer is of such a kind that the offeror needs to know of the acceptance in order to determine his future action and the offeree has reason to know this. If the offeror asks for a promise, it is not enough for the offeree to express his assent secretly, since the offeror is asking for an expressed assurance for the purpose of guiding his future conduct. 1 Corbin on Contracts, § 67 at page 277 (1963); and see American National Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161 (1938); Dunn v. Shane, 195 A.2d 409 (App.D.C.1963). Here Stroman by submitting his offer in the form of a proposed written contract, required acceptance in the form of Lee's signature on the contract. If the sale was to go through, he expected to have Lee's own signature on the contract and to receive notice of such acceptance by 5:00 P.M. on August 22. Mrs. Benfer, who was acting for Lee, was aware of this expectation. There is no evidence of any notice of acceptance by Lee except Mrs. Benfer's oral advice on the telephone that the contract had been signed by Nadine Thomas on behalf of Lee. So far as the record shows, Stroman had never heard of Nadine Thomas. He naturally demanded evidence of her authority. No such evidence was furnished before the five o'clock deadline. At that hour all Stroman knew was that Nadine Thomas had purported to sign the contract for Lee and that Mrs. Benfer was attempting to procure the power of attorney. After the deadline had passed, the power of attorney still had not been furnished, and Mrs. Benfer told him she had tried to get it and did not know why they had not furnished it unless they did not have one. Only then did Stroman announce that he was withdrawing his offer and stopping payment on his earnest money check.

We must accept Mrs. Thomas' testimony that she had shown the power of attorney to Mrs. Benfer earlier that day, but we still have no evidence that any reliable information had been given to Stroman that his offer had been accepted by anyone authorized to act for Lee. Since the reason for requiring notice of acceptance is to give the offeror the assurance he needs to guide his future action, we hold that when an offer is accepted by an agent, notice of the acceptance is not sufficient without reasonable assurance of the agent's authority.

This holding is consistent with established rules of agency. In Morgan v. Harper, 236 S.W. 71 (Tex.Com.App.1922, holdings approved), the agent had a written power of attorney which had been orally revoked. The Commission of Appeals held that the buyer was protected if he had seen and relied on written evidence of the agent's authority, but not if he relied only on the agent's representation of his authority. Morgan stands for the rule that one who deals with a purported agent must look to representations by the principal rather than by the agent for evidence of the agent's authority. Since he is not entitled to rely on the agent's representation when authority is lacking, neither should he be required to accept the agent's representation when authority exists but no evidence of it is produced on demand.

Here Stroman could not safely rely on any oral statement concerning Mrs. Thomas' authority by either Mrs. Benfer or Mrs. Thomas, both of who were purporting to act for Lee. He had no assurance of Mrs. Thomas' authority from either, other than Mrs. Benfer's statement that Mrs. Thomas had signed the contract for Lee. Certainly, he had no evidence from Lee himself. He was justified in demanding to see the power of attorney, and when none was produced by the deadline, he was entitled to assume that his offer had not been accepted.

Affirmed.