**MILLER & MILLER AUCTIONEERS, INC., a corporation, Plaintiff,**

v.

**Paul Grayson MERSCH, an Individual, and Keystone Exploration, Inc., a corporation, Defendants.**

**No. CIV–75–0493–D.**

United States District Court, W. D. Oklahoma.

Feb. 18, 1977.

On Application for Attorney's Fees April 29, 1977.

B. J. Brockett, Robert A. Forbes, Oklahoma City, Okl., for plaintiff.

David E. Deatherage, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

In this case Plaintiff Miller & Miller Auctioneers, Inc., seeks judgment against Defendants Paul Grayson Mersch (Mersch), an individual, and Keystone Exploration, Inc. (Keystone), in the amount of $45,583.39. Plaintiff alleges it sold Defendants at public auction sale at Seguin, Texas, an oil drilling rig with accessory equipment; Defendants' check in payment of said rig was returned marked insufficient funds; Plaintiff's efforts to cause Defendants to honor and pay said check were without avail; Plaintiff, as auctioneer, was required to and has paid the owners of the property bought by Defendants at Seguin and is subrogated to their position; that pursuant to the Uniform Commercial Code (see Note 2) Plaintiff thereafter resold said rig and accessory equipment on notice to Defendants in a commercially reasonable manner at Hennessey and Oklahoma City, Oklahoma and as a result of the resale was short $45,-583.39 in covering the sale price of said rig and accessory equipment as sold to Defendants at Seguin with hauling and sales expenses added thereto.[1]

By way of defense Defendant Mersch individually asserts that he was not personally and individually involved in the Seguin sale and hence the deficiency figure above mentioned should not be entered as a judgment against him. It is the position of Defendant Mersch that the Seguin purchase was accomplished, if at all, by the corporate Defendant Keystone; by way of further defense the Defendants assert that Plaintiff did not discharge its duty to ascertain the authority of Ray Dennis when he claimed to be the agent of Defendants in purchasing the rig at Seguin, Texas; that Ray Dennis exceeded his authority in pur-

---

1. The sale price of the rig and accessory equipment as sold by Plaintiff to Defendants at auction sale in Seguin, Texas on February 27, 1975 minus sales tax was $104,175.00; expenses for hauling said rig from Seguin to Fort Worth, Texas and thence to Hennessey, Oklahoma plus sale expenses totaled $8,883.39 for a total sale cost of $113,058.39. The subsequent sale of said rig and accessory equipment by Plaintiff netted $67,475.00 leaving the above mentioned balance of $45,583.39.

chasing the rig in that he did not accomplish the purchase in the manner or for the amount directed by Defendants and that the rig was not sold in a reasonably commercial manner by Plaintiff after the check presented in payment therefor by Ray Dennis was not honored but returned marked insufficient funds.

In response to the foregoing defenses, Plaintiff asserts that said rig and accessory equipment was purchased individually by Defendant Mersch or if the same was purchased by the corporate Defendant the corporate veil should be pierced so as to make Mersch responsible in that Mersch, the sole owner and president of said Defendant corporation, used the corporation in an improper manner in said sales transaction and as a facade for his own individual actions and thus Defendant Mersch should be held individually responsible with reference to said sale. Also Plaintiff asserts it made a proper and reasonable inquiry as to the authority of Ray Dennis to purchase the rig and accessory equipment as agent for Defendants in that at the time Ray Dennis registered in for the sale and before the auction sale started Plaintiff called Defendant Mersch directly by long distance telephone and ascertained that Dennis was there as his agent with authority to purchase an oil drilling rig with accessory equipment with

the open ended (or blank) check which had been presented to Plaintiff by Dennis and signed by Defendant Mersch on a Keystone bank account in the University Bank in Stillwater, Oklahoma. Plaintiff also asserts that when Defendants failed to pay for said rig with accessory equipment it sold the same on proper notice to Defendants and sold the same in a commercially reasonable manner; that the price differential was due to a decline in the oil drilling business from the time of the sale of the rig and equipment at Seguin, Texas on February 27, 1975 until the noticed sale at Hennessey, Oklahoma on May 2, 1975 and the subsequent sale at Oklahoma City; that the Hennessey sale was an auction sale well advertised and properly conducted.

From the evidence presented the Court makes the following findings of fact and conclusions of law:

Defendant Mersch authorized Ray Dennis to proceed to Seguin, Texas and purchase an oil drilling rig and accessory equipment. Mersch gave Dennis a check without the amount thereof being filled in. The check was on the Keystone bank account in the University Bank in Stillwater, Oklahoma. It was signed by Mersch without Mersch designating his representative capacity as the signer of the check.[2] At the time the

2. The provisions of the Uniform Commercial Code (UCC) are applicable regarding the obligations and rights of the parties as to the check in question. *No conflicts of laws problem exists* as the UCC is the law of Oklahoma, 12A Oklahoma Statutes §§ 1–101 to 10–104, where this action is brought and where the payee bank is located and Texas, V.T.C.A., Bus. & C. §§ 1.101 to 11.108, where the check was tendered. For convenience, the references to the UCC will be as codified under Oklahoma Statutes.

12A Oklahoma Statutes 1971 § 3–403 relates to signatures in a representative capacity. The statute provides:

"UCC § 3–403. Signature by Authorized Representative.

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity."

*Anderson, Uniform Commercial Code,* 2d Ed. § 3–403:6 states as follows:

"The Code makes the exception of organization officers from personal liability more readily obtained than in the case of an ordinary agent. As to such officers, there is no personal liability if the instrument names the

574

check was signed by Mersch and given to Dennis and at the time of the Seguin sale the Keystone bank account was not capable of satisfying this check and Mersch knew this. Mersch gave Dennis $200.00 in cash as expense money to be used in proceeding to the auction sale to be conducted on February 27, 1975 at Seguin, Texas by the Plaintiff. This sale which was well publicized offered oil drilling equipment to the public at auction. Dennis registered in to the sale as Ray Dennis—Agent for P. G. Mersch—d/b/a Keystone Exploration. Dennis presented the above mentioned blank check to representatives of Plaintiff. Dennis had no letters of credit from a bank. As a result of the above a representative of Plaintiff called Defendant Mersch and inquired as to the status and authority of Dennis. Mersch advised Harold Stephens, this representative of Plaintiff, that Dennis was his agent; that he had authority to bid on and purchase an oil drilling rig with accessory equipment; that no bidding limitation was disclosed or discussed; that no discussion was had regarding Keystone. With this information Dennis was permitted by Plaintiff to bid at the sale. Dennis bought an oil drilling rig with certain accessories which did not include drill pipe. After the sale Dennis undertook to settle up with the Plaintiff and asked one of Plaintiff's representatives to fill out the Mersch check in the amount of the purchase price, namely $108,342.00, which was done. Dennis was given an invoice for what he had purchased by Plaintiff, the invoice being made in the name of Keystone Exp. In the process of settling up a representative of Plaintiff called Mr. Tom Workman, Vice President of the University Bank in Stillwater, Oklahoma regarding the validity of the Mersch check as the same had been filled out in the amount of $108,342.00. Workman advised Thompson (the representative of Plaintiff) that the bank would not honor this check as funds were not available to do so. Thompson then called Defendant Mersch and informed Mersch that the bank had informed him that the check would not clear whereupon Mersch advised Thompson not to worry as he would take care of everything and make it good, that this was just a misunderstanding, that he was then en route to the bank. In this conversation Thompson informed Mersch of the bid of Dennis and the purchase price involved. Thompson said that the rig and equipment could be put up for resale but Mersch instructed him not to do so. Further Mersch did not object to the sale price that was then disclosed by Thompson.

Thereafter considerable efforts were made by Plaintiff in contacts with Mersch to cause the check to be honored. Calls were also made to the University Bank in Stillwater. These efforts were to no avail and the check was never honored. In due course Plaintiff sold the rig and equipment as aforesaid.

Mersch testified he does not recall the telephone call from Stephens to him about the authority of Dennis prior to the sale. Stephens testified in detail regarding such conversation and Plaintiff produced a telephone bill indicating the call was made. Dennis testified that such telephone conversation took place. Dennis testified that after he purchased the rig and equipment he called Mersch and advised him that he (Mersch) had just bought a rig, gave him the purchase price, told him that it was a good rig, would hold up and give good service; that Mersch made no objection to what he had paid for the rig and equipment and voiced no objection that drill pipe was not included in this purchase. Defendant Mersch acknowledges talking to Thompson on the date of the sale and advising him that he would try to get ahold of the banker. Defendant Mersch further testified that he could not say that he ever told the Plaintiff or any of its representatives that Dennis had exceeded his authority in the purchase of the rig and equipment on February 27, 1975.

organization and the signature of the officer shows the title of his office."
In the instant case, the signature of Defendant Mersch does not show the title of his office

and thus Defendant Mersch is personally obligated on the instrument in question.

After reasonable efforts were made to cause the above mentioned check to be honored the Plaintiff moved the rig to Hennessey, Oklahoma where it was offered for resale at auction in a large and well publicized sale of oil field equipment conducted at Hennessey on May 2, 1975. This sale was extensively advertised. Several thousand brochures had been mailed to potential purchasers of oil field equipment. The Defendants were each notified of the time and place of the resale by certified letter. Though the notices were returned by postal authorities unclaimed, the Defendant Mersch acknowledged in his testimony that he knew of the resale and that the rig and accessories purchased by Dennis at Seguin were being resold. He did not attend the resale. It turned out to be a rainy day and the Hennessey sale was a disappointment in that bid prices were at a lower level than at Seguin. The oil business had declined according to the evidence. Evidence discloses and the Court finds that from the date of the Seguin sale to the date of the Hennessey sale the oil business had sustained a considerable decline with reference to the sale and purchase price of oil field equipment. The Court therefore finds and concludes that the Plaintiff disposed of the drilling rig and accessories on proper and reasonable notice of time and place of resale and in good faith and in a commercially reasonable manner and in accordance with the statutory requirements set out in 12A Oklahoma Statutes §§ 2–703 and 2–706.[3] This is so notwithstanding that the certified mail letters sent to the Defendants were returned unclaimed for in this connection Defendant Mersch acknowledged that he had notice and knew of the Hennessey sale and that the same would include the drilling rig and accessories purchased by Dennis at Seguin. The resale of said rig and accessories was accomplished in a commercially reasonable manner notwithstanding the fact that Plaintiff was able at the Hennessey sale to only sell $30,475.00 worth of accessories to the rig. Plaintiff attempted to sell the rig through one Casady, an oil field equipment dealer, but without success. Thereafter, on March 11, 1976 at a further

---

3. These statutes provide:

"§ 2–703. Seller's Remedies in General.

Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2–612), then also with respect to the whole undelivered balance, the aggrieved seller may

\* \* \* \* \* \*

(d) resell and recover damages as hereafter provided (Section 2–706);"

"§ 2–706. Seller's Resale Including Contract for Resale.

(1) Under the conditions stated in Section 2–703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this Article (Section 2–710), but less expense saved in consequence of the buyer's breach.

(2) Except as otherwise provided in subsection (3) or unless otherwise agreed resale may be at public or private sale including sale by way of one or more contracts to sell or of identification to an existing contract of the seller. Sale may be as a unit or in parcels and at any time and place and on any terms but every aspect of the sale including the method, manner, time, place and terms must be commercially reasonable. The resale must be reasonably identified as referring to the broken contract, but it is not necessary that the goods be in existence or that any or all of them have been identified to the contract before the breach.

(3) Where the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell.

(4) Where the resale is at public sale

(a) only identified goods can be sold except where there is a recognized market for a public sale of futures in goods of the kind; and

(b) it must be made at a usual place or market for public sale if one is reasonably available and except in the case of goods which are perishable or threaten to decline in value speedily the seller must give the buyer reasonable notice of the time and place of the resale; and

(c) if the goods are not to be within the view of those attending the sale the notification of sale must state the place where the goods are located and provide for their reasonable inspection by prospective bidders; and

(d) the seller may buy."

well publicized auction sale conducted at Oklahoma City (Great Plains Drilling Company), the rig alone was sold for $37,000.00. This sale is found to have been a commercially reasonable sale of the rig notwithstanding that Defendants were not noticed regarding this subsequent sale at Oklahoma City. It is deemed sufficient that Defendants were noticed regarding the resale of the entire Seguin purchase at Hennessey and that further notice was not necessary because not all the Seguin purchase could be sold at Hennessey. The notice to Defendants of the initial resale of all the property at Hennessey satisfies the statute. Defendants did not appear at the Hennessey sale to look after their interests. It is not deemed necessary thereafter for Plaintiff to give certified mail notice to Defendants when it might sell any or all of the items or parcels remaining after the Hennessey sale.

The Plaintiff was required to use due care and reasonable diligence when Dennis presented himself at Seguin as an agent of Defendants and supplied the open ended check signed by Mersch to inquire and ascertain whether the purported agent was properly acting as such and was dealing within the scope of his powers. In this connection Plaintiff's representative immediately and before the sale started called Mersch by long distance telephone, inquired of the purported agency and obtained from Mersch his personal assurances that Dennis was his authorized agent, that he had furnished the check and that Dennis was there to buy an oil drilling rig and accessories. A third person, by undertaking to deal with a known or purported agent, is put upon inquiry as to the nature and scope of his powers, and must use due care to discover them or else suffer the consequences if they are exceeded. *Boucher v. City Paint & Supply, Inc.*, 398 S.W.2d 352 (Tex.Civ.App. 1966); *First Texas Joint Stock Land Bank v. Holloway*, 77 S.W.2d 301 (Tex.Civ.App. 1934); *American Mortgage Corp. v. Spencer*, 45 S.W.2d 301 (Tex.Civ.App.1931); 2A C.J.S. Agency § 168 (1972). The third person dealing with a known agent must use reasonable diligence and prudence to as-

certain whether the agent is acting and dealing with him within the scope of his powers. *Lee v. Stroman*, 470 S.W.2d 783 (Tex.Civ.App.1971); *Sharpstown State Bank v. Great American Insurance Co.*, 441 S.W.2d 548 (Tex.Civ.App.1969); *Bolin v. Pacific Finance Corp.*, 278 S.W.2d 879 (Tex. Civ.App.1954); 2A C.J.S. Agency § 169 (1972); 3 Am.Jur.2d Agency § 78 (1962). The duty merely requires a preliminary inquiry sufficient to disclose the apparent authority with which the principal has clothed the agent and imposes on one dealing with him no further obligation to inquire into the agent's actual authority. 2A C.J.S. Agency § 168 (1972). Having discovered the general tenor of the authority with which the agent is vested, the third person is entitled to believe it to include power to do all things usually incident to the exercise of authority of that character and need not busy himself to discover the existence of particular limitations or private restrictions which confine it within a narrower compass, where nothing appears in the surrounding facts or circumstances to suggest the need of such precautions. *Standard Fire Insurance Co. of Hartford, Conn. v. Buckingham*, 211 S.W. 531 (Tex.Civ.App.1919); 2A C.J.S. Agency § 168 (1972).

The Court finds and concludes that Plaintiff exercised the required due care and reasonable diligence to ascertain the agency of Dennis and the scope of his authority. This is deemed sufficient to make Dennis the agent of Mersch individually. But if the Court should be incorrect in this finding and conclusion and it should be held that Dennis was the agent only of Keystone, then the Court finds and concludes under the circumstances of this case that the corporate veil of Keystone should be pierced and Mersch should be individually found responsible for the consequences of the Dennis purchase at Seguin with an insufficient funds check. This is on the basis that Mersch was using the Keystone corporation as a facade for himself to wrongfully purchase an oil drilling rig by a spurious check which at the time of signing and delivering same to Dennis and causing same

to be presented to Plaintiff was known by Mersch to be a spurious check in that the bank account did not have the funds therein with which such check could be honored. Mersch knew this situation and cannot be excused from its consequences by self-serving testimony that he thought he would receive a bank loan in sufficient amount to pay the check. Volume I Fletcher Cyc. Corp. (Perm.Ed.) § 41 has been cited by both the Oklahoma Supreme Court, *Buckner v. Dillard*, 184 Okl. 586, 89 P.2d 326 (1939) and by the United States Court of Appeals for the Tenth Circuit in applying Oklahoma law, *Robertson v. Roy L. Morgan, Production Company*, 411 F.2d 1041 (Tenth Cir. 1969) as authoritative in the matter of piercing the corporate veil in cases of fraud and conduct in contravention of law. Section 41 of this authority reads in part as follows:

> ". . . practically all authorities agree that under some circumstances in a particular case the corporation may be disregarded as an intermediate between the ultimate person or persons or corporation and the adverse party; and should be disregarded in the interest of justice in such cases as fraud, contravention of law or contract, public wrong, or to work out the equities among members of the corporation internally and involving no rights of the public or third persons. There is a growing tendency of courts to do so . . If any general rule can be laid down, in the present stage of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud or defend crime, the law will regard the corporation as an association of persons . . . ."

Sufficient reason to disregard the corporate entity has been shown by the aforesaid wrongful conduct of Defendant Mersch involving fraud and illegal action and in the interest of justice and to do equity.[4]

---

4. The evidence herein is also sufficient to hold that Keystone was the mere alter ego of Mersch and the corporate entity may be disregarded. Volume I, Fletcher Cyc. Corp. (Perm. Ed.) § 41.1.

In view of the foregoing findings of fact and conclusions of law Plaintiff should recover judgment herein against the Defendants jointly and severally in the amount of $45,583.39. Judgment will be entered herein this date by separate document in such amount.

## MEMORANDUM OPINION

### On Application for Attorney's Fees

Plaintiff was the prevailing party at the non-jury trial of this case and was awarded a judgment in the amount of $45,583.39 against Defendants. The Court found that Plaintiff at public auction sale at Seguin, Texas, sold Defendants an oil drilling rig with accessory equipment; Defendants' check in payment of said rig was returned marked insufficient funds; Plaintiff's efforts to cause Defendants to honor and pay said check were without avail; Plaintiff, as auctioneer, was required to and did pay the owners of the property bought by Defendants at Seguin and was subrogated to their position; that pursuant to the Uniform Commercial Code Plaintiff thereafter resold said rig and accessory equipment on notice to Defendants in a commercially reasonable manner at Hennessey and Oklahoma City, Oklahoma and as a result of the resale was short $45,583.39 in covering the sale price of said rig and accessory equipment as sold to Defendants at Seguin with hauling and sales expenses added thereto.

Plaintiff has filed herein an Application for Attorney's Fees in the amount of $12,-000.00. Said Application is supported by a Brief. Defendants have filed a Motion to Dismiss said Application. Defendants' Motion is supported by a Brief and Plaintiff has filed a Brief in reply to said Motion.

In support of its Application, Plaintiff contends that this case was an action for breach of contract relating to the sale of goods and as Plaintiff was the prevailing

party, Plaintiff is entitled to attorney's fees pursuant to 12 Okla.Stat.1971 § 936.[1]

Defendants urge that Plaintiff's Application should be dismissed for the reasons that as this case was an action to enforce payment or collect upon a check drawn upon a bank, payment of which was refused because of insufficient funds, 12 Okla.Stat. 1971 § 937[2] is applicable and there is no evidence before the Court that Plaintiff had complied with the demand proviso of said section. Defendants ask that in the event their Motion is overruled, Plaintiff be directed to furnish Defendants with a copy of the Application for Attorney's Fees and Brief and Defendants be granted additional time to respond to same as neither Defendants nor their attorney of record herein have been served with a copy of said Application as required by Rule 5, Federal Rules of Civil Procedure.

Two issues are raised in regard to Plaintiff's Application. The first and threshold issue is whether the prevailing party herein is entitled to recover attorney's fees. The second matter is the appropriate amount of such fees if Plaintiff, the prevailing party, is entitled to recover same.

 Subject matter jurisdiction in this action is based upon diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332. Attorney fees in diversity cases are determined in accordance with the laws of the state in which the Federal Court is situated. *Toland v. Technicolor, Inc.*, 467 F.2d 1045 (Tenth Cir. 1972); *Kilpatrick Brothers, Inc. v. International Business Machines Corp.*, 464 F.2d 1080 (Tenth Cir. 1972). In the instant case,

the applicable Oklahoma statute relating to the allowance of attorney's fees depends upon whether this case is found to be an action for breach of contract or to collect upon a check. It seems clear that this case was an action for breach of a contract relating to the purchase or sale of goods rather than an action to enforce payment of a check. Plaintiff's Complaint alleged that Defendants "purchased at a public auction sale" the drilling rig and equipment and Defendants' failure to pay the agreed purchase price. These allegations would apparently establish a *prima facie* case for breach of contract. Furthermore, Plaintiff sought damages in this action in an amount equal to the loss it incurred upon the resale of the drilling rig and equipment Defendant had agreed to purchase. Had this action been brought to enforce payment of Defendants' check as Defendants claim, it is obvious that Plaintiff would have sought recovery of the entire $108,342.00 amount of said check rather than the breach of contract measure of damages Plaintiff actually requested in its Complaint and obtained in the decision of the Court. Therefore, the Court finds that as this case was a civil action to recover for breach of contract relating to the sale of goods, 12 Okla.Stat.1971 § 936 is the applicable statute and Plaintiff is entitled to recover attorney's fees in accordance with said statute.

 Plaintiff requested "a reasonable attorney's fee" in its Complaint but put on no evidence regarding same during the trial of this action. Oklahoma does not require that a request for attorney's fees be

---

1. 12 Okla.Stat.1971 § 936 provides in pertinent part as follows:

 "In any civil action to recover on . . . [a] contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

2. 12 Okla.Stat.1971 § 937 provides in pertinent part as follows:

 "In any civil action to enforce payment of or to collect upon a check . . . payment

upon which said instrument has been refused because of insufficient funds or no account, the party prevailing on such cause of action shall be awarded a reasonable attorney's fee, such fee to be assessed by the court as costs against the losing party; provided, that said fee shall not be allowed unless the plaintiff offers proof during the trial of said action that prior to the filing of the petition in the action demand for payment of the check . . . had been made upon the defendant by registered or certified mail not less than ten (10) days prior to the filing of such suit."

made in the pleadings and it is proper for the court to tax the fee on motion. *G. A. Mosites Co. of Ft. Worth, Inc. v. Aetna Casualty and Surety Co.*, 545 P.2d 746 (Okl. 1976); *Owen v. Miller*, 190 Okl. 205, 122 P.2d 140 (Okl.1942). However, attorney's fees may be granted only if evidence is introduced establishing the value of the services performed. *Irwin v. West End Development Co.*, 481 F.2d 34 (Tenth Cir. 1973); *Del Rey Air v. Expressway Airpark, Inc.*, 468 F.2d 187 (Tenth Cir. 1972).

Accordingly, Defendants' Motion to Dismiss should be overruled and unless the parties shall confer and agree upon a reasonable attorney's fee and report such action to the Court within fifteen (15) days from the date hereof, the Court will conduct a hearing to receive evidence of the value of the services by Plaintiff's attorney and thereafter will award a reasonable attorney's fee to Plaintiff to be taxed as costs.

As to Defendant's request that the Court direct Plaintiff to furnish Defendant with a copy of the Application, the Court concludes that said request should be denied. Rule 5(b), Federal Rules of Civil Procedure, provides for service by mail upon a party represented by an attorney by mailing a copy to the attorney at his last known address. Local Court Rule 8(b) provides for service in the manner specified in Rule 5(b), *supra*. Local Court Rule 8(c) provides that proof of service shall be made by the certificate of any attorney of record and such certificate may be endorsed upon the pleading, motion or other paper required to be served. As Plaintiff's attorney has complied with the requirements of the above Rules, the Court finds and concludes that it is unnecessary to direct Plaintiff to furnish Defendant with an additional copy of the Application for Attorney's Fees and Brief. As Defendants have moved to dismiss said Application it is assumed that Defendants had a copy of same for the preparation of said Motion. However, the Clerk will mail a copy of the Application and Brief herewith.