**LARSEN LEASING, INC., Plaintiff,**

v.

**THIELE, INC., Defendant.**

**No. K85–92 CA9.**

United States District Court, W.D. Michigan, S.D.

Oct. 17, 1990.

Llewellyn W. Gray of Stanley, Davidoff & Gray, Kalamazoo, Mich., for plaintiff.

Myra L. Willis of Howard & Howard, Kalamazoo, Mich., for defendants.

### OPINION

JOSEPH G. SCOVILLE, United States Magistrate.

This is a diversity action involving the sale and lease of ten heavy equipment trailers. Thiele, Inc. manufactured ten trailers, which were sold to VanKal Truck Equipment and Service, a dealer. VanKal sold the trailers to Larsen Leasing, Inc., who in turn leased them to S.M.E. Leasing, Inc. All matters in this case have been settled with the exception of one disputed claim between Thiele and Larsen Leasing. These

parties have stipulated to the facts, have consented to disposition of their dispute by a United States Magistrate pursuant to 28 U.S.C. § 636(c), and have waived all rights to appeal the resolution of this matter (Stip. and Order, docket # 229).

### Stipulated Facts

In 1984, S.M.E. began experiencing defect problems with the ten trailers it had leased from Larsen Leasing. Consequently, S.M.E. refused to make its lease payments, and this lawsuit was born. During the course of the litigation, Larsen Leasing voluntarily repossessed eight of the trailers from S.M.E. and stored the trailers at Larsen Leasing's premises in Coldwater, Michigan (Stipulated Facts, ¶¶ 2–3). On September 5, 1985, counsel for Larsen Leasing notified all other counsel that the trailers were available for inspection and that after inspection, "Larsen Leasing, Inc. will use its best efforts to dispose of said vehicles in a reasonably commercial manner" (Stipulated Facts, ¶ 4). Inspections were completed and on November 25, 1985, counsel for Larsen Leasing informed Max Larsen, Chief Operating Principal of Larsen Leasing, that Larsen Leasing could dispose of the trailers by public auction or some other commercially reasonable sale (Stipulated Facts, ¶ 5).

On May 27, 1986, counsel for Larsen Leasing sent a letter to the other attorneys, stating in part:

> The trailers cannot be sold and put into use without complete rebuilding. Larsen Leasing, Inc. has sought out buyers. The best offer is Max Larsen, Inc., a sister corporation to Larsen Leasing, Inc., specializing in the sale and repair of heavy vehicles. Max Larsen, Inc. has offered $6,000 each or $48,000 total for the 8 trailers. Max Larsen, Inc. will have these 8 trailers completely rebuilt before resale.

The letter went on to offer these eight trailers for sale to any of the parties in this case at the same price (Stipulated Facts,

¶ 7). After receiving no response from any other party, Larsen Leasing sold the trailers to Max Larsen, Inc. for $48,000 on June 16, 1986 (Stipulated Facts, ¶ 8). On June 24, eight days later, Max Larsen, Inc. sold the eight trailers to Freuhauf Corporation for a total price of $56,000, or $7,000 per trailer (Stipulated Facts, ¶ 9).

In seeking damages in this lawsuit, Larsen Leasing submitted the figure of $48,-000 as representing the proceeds received by Larsen Leasing upon the sale of trailers in mitigating its loss. Before the settlement of the other issues in this case, Thiele did not become aware that Max Larsen, Inc. had received $56,000 for resale of the eight trailers to Freuhauf (Stipulated Facts, ¶¶ 11–12). Given the proximity in time between the sales from Larsen Leasing to Max Larsen, Inc. and from Max Larsen, Inc. to Freuhauf, Thiele contends that $56,000 should be the figure used to represent Larsen Leasing's recovery on the sale of the goods. Consequently, Thiele seeks an $8,000 refund from Larsen Leasing.

Pursuant to stipulation, the disputed funds are being held in escrow pending the court's determination of the issues. During a telephone conference between the court and counsel, the parties waived oral argument and stipulated to the resolution of this dispute upon the agreed facts and briefs (Order, docket # 232). Briefs have now been submitted, and the case is ready for decision.

### Discussion

The sole issue in dispute is whether the sale of the eight trailers from Larsen Leasing, Inc. to Max Larsen, Inc. was "made in good faith and in a commercially reasonable manner" in accordance with U.C.C. § 2–706, Mich.Comp.Laws § 440.2706(1).[1] Thiele, in essence, contends that the sale was not commercially reasonable because of the relationship between Larsen Leasing and Max Larsen, Inc., the immediate subsequent sale to Freuhauf, and the resulting

---

**1.** The parties have agreed that this dispute should be governed by the standards and procedures set forth in Article Two of the Uniform Commercial Code, and especially the resale provisions of U.C.C. § 2–706(1) (Thiele Brief, p. 2; Larsen Brief, p. 2).

profit made by Max Larsen, Inc. In contrast, Larsen Leasing argues that the fact that Larsen Leasing and Max Larsen, Inc. are related corporations does not alone make the sale commercially unreasonable. For the reasons outlined below, the court concludes that the sale between Larsen Leasing, Inc. and Max Larsen, Inc. was not commercially reasonable.

■ There is a dearth of reported case law addressing the question of the commercial reasonableness of a U.C.C. § 2–706 sale to a related corporation for purposes of mitigating losses. One point is clear: A private sale under § 2–706 to an affiliated corporation is not *per se* commercially unreasonable. *See Allied Grape Growers v. Bronco Wine Co.*, 203 Cal.App.3d 432, 249 Cal.Rptr. 872, 6 U.C.C.Rep.Serv.2d 1059 (1988). The question, therefore, is whether the sale in this particular case was commercially reasonable in light of all relevant facts and circumstances, including the relatedness of the purchaser. Both parties have made arguments attempting to explain why the sale was or was not commercially reasonable. In addressing this question, the pivotal issue in this case concerns allocation of the burden of proof.

■ When a seller avails himself of the remedy of resale under Article II, he bears the burden of showing that the sale was made in good faith and in a commercially reasonable manner. *See Anheuser v. Oswald Refractories Co.*, 541 S.W.2d 706, 711 (Mo.App.1976); *accord, Cole v. Melvin*, 441 F.Supp. 193, 195 (D.S.D.1977); *President Container, Inc. v. Patimco*, 82 A.D.2d 879, 440 N.Y.S.2d 313, 31 U.C.C.Rep.Serv. 1372, 1373 (1981). The seller is in the best position to know what affirmative steps were taken to ensure that any sale was conducted in good faith and in a commercially reasonable manner. Under the analogous provisions of section 9–504, a seller or creditor who has repossessed collateral and chosen to resell must do so in "a commercially reasonable manner." [2] The Sixth Circuit holds that the seller bears the burden of

demonstrating commercial reasonableness under Article Nine. *See K.B. Oil Co. v. Ford Motor Credit Co.*, 811 F.2d 310, 314 (6th Cir.1987); *United States v. Willis*, 593 F.2d 247, 258 (6th Cir.1979); *see also* Annotation, *Burden of Proof as to Commercial Reasonableness of Disposition of Collateral*, 59 A.L.R.3d 369 (1974). Accordingly, the court concludes that Larsen Leasing bears the burden of showing that the sale to Max Larsen, Inc. was in good faith and commercially reasonable. Larsen Leasing has not carried its burden.

The stipulated facts reveal that on November 25, 1985, Max Larsen, the principal operator of Larsen Leasing, was informed that he could dispose of the trailers "by public auction or some other commercially reasonable sale." The recitation of facts then jumps six months to May 27, 1986, when counsel for Larsen Leasing informed the other parties that "Larsen Leasing, Inc. has sought out buyers. The best offer is Max Larsen, Inc., a sister corporation to Larsen Leasing, Inc." The factual record contains no details concerning attempts by Larsen Leasing to contact other buyers, the identity of the other buyers sought, what discussions took place, or any other possible prices for the trailers. This is a fatal deficiency in the record, as the court has no facts upon which to gauge the reasonableness of the sale. The record merely reveals that Larsen Leasing, Inc., run by Max Larsen, did not find a buyer for over six months; yet Max Larsen, Inc., run by the same person, found a buyer in eight days. Simply stated, the absence of any evidence documenting the efforts expended by Larsen Leasing to procure a buyer for the trailers prevents this court from concluding that the sale to Max Larsen, Inc. was commercially reasonable.

The *Allied Grape Growers* case, upon which Larsen Leasing heavily relies, is instructive. That case, like the present one, involved a section 2–706 resale to an affiliated party. The court held that sale to a related party, without more, does not ren-

---

**2.** The definitive authorities on U.C.C. law, White and Summers, state that "courts will surely look to decisions under 9–504 for guidance in determining what is "commercially reasonable" for a 2–706 sale. 1 J. White & R. Summers, Uniform Commercial Code, 346 (3d ed. 1988).

der a resale unreasonable. 249 Cal.Rptr. at 879, 6 U.C.C.Rep.Serv.2d at 1073. The court's analysis, however, did not end there. The court went on to examine the "substantial evidence" submitted by the reselling party to justify the reasonableness of the sale, including market price, previous sales efforts, and other options open to the seller. *Id.* at 879–80, at 6 U.C.C.Rep. Serv.2d at 1073–74. Only after examining this evidence did the court conclude that the sale was reasonable. In the present case, Larsen Leasing has provided no such evidence. Even if the sale had not been made to a related party, Larsen Leasing would nevertheless be required to prove its efforts to resell the trailers and to assure a fair price. *See Miller & Miller Auctioneers, Inc. v. Mersch,* 442 F.Supp. 570, 575 (W.D.Okla.1977) (section 2–706 sale reasonable in light of extensive advertising, public notice, and mailing of brochures to purchasers). Larsen has not done so.

Larsen Leasing emphasizes the fact that it provided the parties with reasonable notification of the sale to Max Larsen, Inc., and offered to sell the trailers to the parties on the same terms. Reasonable notification by the seller is a requirement of U.C.C. § 2–706(3), but it is not the sole requirement. Even where a seller shows reasonable notification, he nevertheless must show that all other aspects of the sale were likewise reasonable. *Coast Trading Co. v. Cudahy Co.,* 592 F.2d 1074, 1080 (9th Cir. 1979). The record does not document whether Larsen Leasing did anything to try to sell these trailers prior to notifying the parties of the sale to Max Larsen, Inc. For all the record shows, Larsen Leasing did nothing prior to deciding to sell to Max Larsen, Inc. for $48,000.

Larsen Leasing also argues that Thiele should not be heard to cry foul, because Thiele could have bought the trailers for $48,000 and then resold them for a profit. This argument avoids the issue. The burden was not on Thiele to insure that Larsen Leasing's sale was reasonable. The burden was on Larsen Leasing to mitigate its damages in a commercially reasonable way. Any argument that this dispute is Thiele's fault because it could have purchased the trailers is totally misplaced.

Larsen Leasing's final contention is that it could not deal directly with Freuhauf in the resale of the damaged Thiele trailers. This argument is questionable at best and detrimental to Larsen at worst. The parties agree that once inspection was completed, Larsen Leasing could sell the trailers in a public auction or other commercially reasonable manner. Larsen Leasing offers no reason why it could not deal directly with Freuhauf. A possible reading of this argument leads to the inference that Larsen Leasing was aware, through Max Larsen, of Freuhauf's interest in the trailers, but decided not to consummate the deal through Larsen Leasing. Clearly, this scenario raises a strong inference of an unreasonable commercial sale.

## Conclusion

The reported case law involving U.C.C. § 2–706 sales, as well as the authority concerning analogous U.C.C. § 9–504 sales, holds that the seller of repossessed property bears the burden of proving that the subsequent sale to mitigate damages was conducted in good faith and in a commercially reasonable manner. The stipulated facts reveal that Larsen Leasing was given permission in late November, 1985, to sell the trailers. Six months later, counsel for Larsen Leasing informed the parties that buyers had been sought but that the best offer was from Max Larsen, Inc., an affiliated corporation. There is no evidence of what, if any, efforts were expended to seek out other buyers or to insure a fair price. Instead, Larsen Leasing sold the trailers to Max Larsen, Inc., who after six months of failure found a buyer in eight days willing to pay $8,000 more than Max Larsen, Inc. paid.

The court finds that Larsen Leasing has failed in its burden to prove that the sale to Max Larsen, Inc. was commercially reasonable. In these circumstances, the $56,000 resale by Max Larsen, Inc. is chargeable to Larsen Leasing under U.C.C. § 2–706(1). Accordingly, judgment in the amount of

$8,000 will be entered in favor of Thiele, Inc.